## BRALEY *v.* BRALEY.

A party to a suit can not in general give in evidence his own declarations, although they were afterward communicated to the other party whose declarations on hearing them are made evidence; and although they might aid in illustrating the meaning of the latter.

A witness who has testified what a party said, shall not be asked what he understood by the words used.

A caption of depositions referring to one of the deponents by his christian name only, is not for that cause defective.

Braley *v.* Braley.

Assumpsit on a note for $381, and interest.

In the course of the trial of this cause the plaintiff offered the deposition of James Smith, containing these words: "A few days before the commencement of this suit the old gentleman (meaning the plaintiff) came to me and wanted me to go and see Daniel (the defendant), [said that Daniel had bargained away the farm, and he had no security for the note he held against him, and he wanted me to go to Daniel and see if Daniel would give security for what he owed him, and give back the bond for the support of his mother, or give a new one to him or to the town]. I went to Daniel and told him what the old gentleman wanted. Daniel said he was willing to secure the old gentleman by a mortgage of part of his farm, and would leave it to me or any good man to say how much, but said he would not give a new bond, but was willing to support the old lady at his house the same as he had done, but would not any where else."

That part of the quotation in brackets commencing with the word "said" after the word "defendant," and ending with the word "town," was ruled out by the court.

The plaintiff also offered the deposition of William Braley containing this question, which was excepted to and ruled out by the court: "Did you understand from what he (the defendant) then said, that he (the defendant) was then under a written obligation to support his mother?"

The plaintiff also offered the deposition of Archibald Ford, which came up with a caption, which it appeared the defendant attended. It also appeared that Ford was cross-examined by the defendant, and there was a certificate of the magistrate upon the deposition that the witness had subscribed and sworn to it.

The caption began as follows: "Then the said Otis Wescott, James Smith, James Braley, Leonard Betton, Nathan B. Green, and Archibald, after due caution," &c.

Braley *v.* Braley.

The surname "Ford" being omitted and there being no "Archibald Ford" named in the caption.

The names of the witnesses were not indorsed upon the back of the caption. The deposition was ruled out by the court.

The jury returned a verdict for the defendant, and the plaintiff moved for a new trial on account of the foregoing rulings of the court.

*Kittredge,* for the plaintiff, contended that the language of the plaintiff having been communicated by the witness to the defendant, should be permitted to be proved as if it had been used by the plaintiff in conversation with the defendant. Without knowing what was said to the defendant, his language contained in the deposition was not intelligible.

A witness may state what he understood from conversations which he heard.

The deponent Archibald Ford was sufficiently identified by his christian name without the surname.

*Quincy,* for the defendant, as to the declarations of parties in their own favor, referred to 5 Cow. 335; 7 do. 459; 8 Pick. 165; 2 Cow. Phil., note 165.

The opinion of a witness on what he heard said, is not competent. The witness here told all that was said.

The name of Archibald Ford the deponent is not in the caption.

WOODS, J. The first question arises upon the rejection of a portion of the deposition of James Smith, offered in evidence by the plaintiff. The paragraph from the deposition, of which a portion was ruled out, reads thus:

"A few days before the commencement of this suit, the old gentleman (meaning the plaintiff) came to me and wanted me to go and see Daniel, the defendant; said that

Braley *v.* Braley.

Daniel had bargained away the farm, and he had no security for the note he held against him; and he wanted me to go to Daniel and see if Daniel would give security for what he owed him, and give back the bond for the support of his mother, or give a new one to him or to the town. I went to Daniel and told him what the old gentleman wanted. Daniel said he was willing to secure the old gentleman by a mortgage of part of his farm, and would leave it to me or any good man to say how much; but said he would not give a new bond, but was willing to support the old lady at his house, the same as he had done, but would not any where else."

The portion of the foregoing paragraph which was ruled out, was these words: "Said that Daniel had bargained away the farm and he had no security for the note he held against him; and he wanted me to go to Daniel and see if Daniel would give security for what he owed him, and give back the bond for the support of his mother, or give a new one to him or to the town."

We are of the opinion that the ruling in this particular was correct. The matter objected to and ruled out was a conversation had between the plaintiff and the witness, when the defendant was not present; and it is a well-settled general rule, that the declarations of a party made not in the presence of the opposite party, can not be given in evidence in his own favor. He is not allowed in that way to make proof in his own behalf. The general rule was conceded at the argument, but it was contended that this case forms an exception, by reason of the fact that the witness also testified that he went to the defendant, and told him what the plaintiff wanted.

But granting that by the language used by the witness, he is to be understood to have testified that he told the defendant what the plaintiff had said to him; still the objection is not removed. The objection is that the declarations of the plaintiff are directly given in proof to

the jury. The witness should not have testified what the plaintiff stated to him, even though he had communicated it to the defendant; for notwithstanding that communication, the rule of law is violated which forbids a party to give his own declarations in evidence in his own favor.

The material thing to be proved, was what the defendant said and did; and what was said to him is admissible so far as it gives point and significancy to the ensuing acts and declarations of the defendant. For this purpose, it would have been proper for the witness to have testified what he said to the defendant, including of course the language by which he gave him to understand that he was speaking at the request of the plaintiff, and using the words directed by him to be used. He then might have stated what the defendant said in reply, or that he said nothing. Further than this he could not lawfully go, nor are there any considerations of necessity or convenience requiring him to go further.

The objection to the evidence was, that instead of restricting himself to the conversation between himself and the defendant, the witness brings forward communications which he received from the plaintiff, that the defendant did not hear.

It is nothing to the purpose that he goes on to testify that he afterward repeated to the defendant the words of the plaintiff; they are not evidence unless the defendant listened to them. Communications made to a party are evidence against him, because he has an opportunity to reply to them. His admission or denial of a fact communicated may be material to the cause of the opposite party, who has a right even to the slight inferences to be deduced from his silence.

In this case, the witness testifies to declarations made by the plaintiff to him, and not to those made to the defendant, and so they do not fall within the rule or

Braley *v.* Braley.

within the reason of the rule, which admits evidence of declarations made in the presence of the party to be affected by it.

It was stated in the agreement, that the rejected evidence was necessary for the proper understanding of the other evidence in the case. Perhaps the omission of the party to prove what the witness actually said to the defendant, may be the cause that the force of some parts of his evidence is impaired. If it be so however, it is not the fault of any rule of evidence; for it has been seen that there is none which precludes him from showing what was said to the defendant, either by the plaintiff or another; and that was all that was required, to develop the full meaning of what was said by the defendant.

We entertain no doubt that the evidence was properly rejected by the court.

The next exception is based upon the rejection of a question contained in the deposition of William Braley. The question was as follows: " Did you understand from what the defendant then said, that he was under a written obligation to support his mother ? "

In another part of the deposition, this witness testifies that there was some discussion in town meeting, when Daniel Braley was asked by Mr. Whittemore, if he had not given a bond for the support of his mother; and he said he was willing and bound to support her at his own house, and always had been, but no where else ; and on cross-examination by the plaintiff, the witness testified that " the defendant said he was bound and willing to support his mother; said he had given a bond, but did not say that the bond was in existence."

In this case, the witness undertakes to give the entire conversation that was had on the occasion referred to. He gives, or assumes to give, the substance of what was said by each of the interlocutors, in the order in which each one of them spoke. The declarations of the defend-

ant are set out, and the reservations or qualifications with which he admitted his liability, are preserved in their details.

In such a case, we are of the opinion that it is altogether improper to ask the witness what he understood by the conversation. The language used by Braley on the occasion is given. What would be understood, is an inference to be made from the conversation detailed, and that too by the jury. When an inference is to be made from what is said, and the conversation is fully detailed, it is clear that such inference is neither more nor less than a construction or determination of the import of the language used; and it is entirely clear that what a party means or intends by what he says or does, when what he says or does distinctly appears, is an inference which the jury alone are at liberty to make.

The inquiry put, was no more or less than a request that the witness should give his interpretation of the language which he had detailed. He was asked what he understood from what the defendant said on the occasion referred to; which was in effect the same as if he were asked, how he interpreted the language used, and what he supposed the words signified. It is no part of the province of a witness who has stated what was said, to express his opinion as to what the words used meant.

We think this case distinguished altogether from the case of *Eaton* v. *Rice*, 8 N. H. 378; and from *Maxwell* v. *Warner*, 11 do. 568. In the former case, the question was as to the dividing line between two certain lots of land. The witness, who was present at a conversation between the parties, was permitted to testify that he "understood from their conversation, that they then agreed where the true line was." This is as the facts appear in the statement of the case.

From the language of the opinion however, it is to be inferred, not only that the witness was permitted to state

that he understood from their conversation, "that they then agreed where the true line was," but that the witness stated what he understood, from the conversation of the parties, their agreement to have been as to the lines between their land.

In the other case referred to, *Maxwell* v. *Warner*, a witness who was present at a conversation between the parties, was permitted to testify, " that he understood that Warner had agreed to pay the Richardson debt to Maxwell, and that he had taken property of Richardson for security; but what kind of property he took for security, he did not know."

In neither of those cases did the witnesses undertake to state the terms of the agreement, or to detail the conversations which took place on those occasions between the parties on the subject of the agreements to which they related. It is fair to infer that, in neither case, the witness professed to know or to remember the conversation in its particulars.

The ordinary mode of proving a contract is by proving the terms of it; and when a witness has stated its terms, he can go no further in determining what the contract was. So where he states the terms of a contract as detailed to him by another, he can go no further in determining what it was by stating in general terms what he understood it to have been from the communication referred to.

But where a witness who is called to testify to the making of a contract and what it was, or what it may have been represented to him to be, does not know, or can not recollect the terms of the agreement, or the terms in which it was stated to him, he may, having heard the conversation which included the terms which constituted the contract, state in substance what he understood the contract to be, from the conversation which he heard.

Such evidence is not within the rule which excludes the

inferences of witnesses from being given in evidence, and is not in the nature of a mere inference. The witness not knowing or not recollecting the terms in which the parties made their contract, but assuming to recollect and narrate the substance of the conversation heard by him or related to him, is permitted to testify to his understanding of what the contract was, or was stated to be.

Such is the principle upon which the cases of *Eaton* v. *Rice* and *Maxwell* v. *Warner* rest, and by which they are well sustained. In those cases, the witnesses stated what they said was the substance of the conversations, and what the parties in and by those conversations agreed to between themselves. They did not first state what the parties said, and then give their own construction of the language. They assumed in stating what they understood the parties to agree, to give a summary or abbreviation of the language that was used by them.

Nothing like this was proposed to be done in the present case. The witness had given the language of the party, and was asked, in effect, what that language meant. This was improper, and the question was justly excluded.

The third exception relates to the ruling of the court rejecting the deposition of Archibald Ford. The deposition was in fact returned into court in a caption with sundry other depositions, and was signed by Archibald Ford, the witness, and also bore the certificate of the magistrate, that the witness had subscribed and sworn to it. The caption was as follows: "Oct. 26, 1843. Then the within named Otis Woolcott, James Smith, James Braley, Nathan B. Green, and Archibald, after due caution," &c., and then proceeded and concluded in the usual form of captions of depositions.

It is said on the part of the defendant, that Archibald Ford is not sufficiently identified by the reference in the caption, as being the person whose deposition was inclosed in the caption. But we think otherwise. If the caption

had omitted the names of the witnesses altogether, and had read thus: to wit, "Then the within named deponents," &c., we think the persons whose depositions were intended, would have been sufficiently shown, by showing by the depositions themselves, who were the persons whose names were upon the depositions inclosed.

In the case before us, it appeared that there was one deposition upon which was written the name of Archibald; and that was the deposition of Archibald Ford, and was signed by him, and there was no other one having the name of Archibald upon it; and the reference in the caption being made to the within named Archibald, we think that the deposition of Archibald Ford is clearly enough ascertained to be the one referred to in the caption.

There could be, in this case, no misapprehension of the person intended. The caption then of the deposition was not defective, and the deposition intended was sufficiently identified. The ruling rejecting the deposition was therefore erroneous, and the verdict, which was for the defendant, must consequently be set aside and a

*New trial granted.*